CERTIFIED COPY

A True Copy
Teste:



Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3390

MEDMARC CASUALTY INSURANCE COMPANY ,

*Plaintiff/Counterclaim Defendant-Appellee,*

*v.*

AVENT AMERICA, INC.,

*Defendant/Counterclaim Plaintiff-Appellant.*

PHILIPS ELECTRONIC NORTH AMERICA CORPORATION
(as successor-in-interest to Avent America, Inc.),

*Third-Party Plaintiff-Appellant,*

*v.*

STATE FARM FIRE AND CASUALTY COMPANY, and
PENNSYLVANIA GENERAL INSURANCE COMPANY,

*Third-Party Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 5832—**Harry D. Leinenweber**, *Judge.*

ARGUED APRIL 2, 2010—DECIDED JULY 15, 2010

_____

Before FLAUM, WOOD, and HAMILTON, *Circuit Judges*.

FLAUM, *Circuit Judge*.   Avent America, Incorporated
("Avent")[1] appeals the district court's declaratory judg-
ment that Medmarc Casualty, Pennsylvania General and
State Farm insurance companies ("the insurance compa-
nies") do not have a duty to defend Avent in a series
of lawsuits involving the presence of Bisphenol-A
("BPA") in certain products Avent sold. The plaintiffs
in the underlying lawsuits are parents who bought these
Avent products containing BPA and then refused to use
the products once they learned of the dangers of BPA. The
case at hand hinges on whether the underlying law-
suits state claims for damages "because of bodily injury,"
and are therefore covered by the insurance policies, or
not. Avent argues that the underlying suits' claims that
the plaintiffs will not use the products out of fear of
bodily injury sufficiently state claims for damages
"because of bodily injury." The insurance companies
argue that the underlying suits are not covered by the

_____

[1]  Philips Electronic North America Corporation is the successor-
in-interest to Avent America, Inc. Philips Electronic is the
third-party Plaintiff-Appellant in the case against State Farm
and Pennsylvania General. Avent America is the defendant
and counter-claim plaintiff-appellant in the case against
Medmarc Casualty. Throughout the opinion, we will refer
to these parties jointly as Avent.

policies because the claims are limited to economic dam-
ages due to the purchase of unusable products and these
damages are not "because of bodily injury." State Farm
asserts an additional argument that it does not owe
a duty to defend because the term of its coverage
ended well before any of these claims could have arisen.
The district court agreed with the insurance companies.
For the reasons set forth below and based on the insur-
ance companies' admission at oral argument that they
would have to re-examine and alter their position
should the underlying complaints be amended to
include allegations of actual bodily injury, we affirm
the district court's grant of declaratory relief to the insur-
ance companies.

## I. Background

### A. Underlying Lawsuits

This duty to defend case centers around a series of class
action suits filed against Avent for using BPA in their
products without informing the consumers of the health
risks associated with the potential leaching of BPA. The
classes in the underlying suits consist of parents who
purchased Avent's products for their children. While
the fifteen complaints vary in their specific allegations,
they all sketch out the same general claim: Avent manu-
factured products that contained BPA; Avent was aware
of a large body of research that showed that BPA, even
at low levels, is harmful to humans and is particularly
harmful to children; despite this knowledge, Avent
marketed their products as superior in safety to other

products for infants and toddlers; parents would not have purchased Avent's products if they knew that using products with BPA could be harmful to their children; upon learning of the safety problems associated with products that contain BPA, the plaintiff-parents stopped using the products and therefore did not receive the full benefit of their purchase.

These class actions were consolidated for pre-trial purposes into *In re: Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*, MDL No. 1967, in the Western District of Missouri. After the consolidation, many of the underlying plaintiffs from the consolidated class action suits filed a new class action complaint against Avent in the Western District of Missouri. This new action, *Broadway v. Avent America, Inc.*, No. 08 CV 997 (W.D. Mo.) (the "Broadway Action") is the current opera-tive complaint, but the other class action complaints remain relevant insofar as they might be used to send the matters back to the transferor courts. The complaint in the Broadway Action (the "Broadway Complaint") is representative of all of the underlying complaints for the purpose of our discussion of whether the factual allegations state a claim that triggers the insurance com-panies' duty to defend. Therefore, we discuss only the Broadway Complaint in detail in this section.

The Broadway Complaint summarizes the suit in the following manner:

> This action arises out of Defendants' misrepresenta-tions and/or omissions and failures to warn of and/or otherwise disclose that their Baby Products are

> manufactured using a dangerous chemical recognized to be toxic in several respects for years and which poses serious risks to an individuals' health as the fact that it leaches into food and beverages in the course of normal, everyday use.

(Broadway Complaint, ¶ 1.) The complaint defines the purported class of plaintiffs to be "all persons who purchased polycarbonate plastic baby bottles, nipples, training or 'sippy' cups, and other products manufactured, sold and/or distributed by Defendants that contained Bisphenol-A." (Broadway Complaint, ¶ 97.) The complaint dedicates thirteen pages to the health risks caused by exposure to BPA. (Broadway Complaint, ¶ 40-76.) These pages cite to numerous scientific studies that show that BPA exposure causes various problems, including early sexual maturation in females, increased obesity, and increased neuron-behavioral problems such as ADD/HD and autism, in a variety of lab animals. The complaint alleges that the general prevailing consensus from these studies has been that there should be concern about exposure to BPA for humans. However, at no point in those thirteen pages, or anywhere in any of the underlying complaints, do the plaintiffs allege that any of these negative health effects have manifested in their children. Notably, the plaintiffs never allege that they or their children ever used the products or were actually exposed to the BPA. Instead, the plaintiffs allege a uniform injury across all plaintiffs that stems from their purchasing an unusable product. (Broadway Complaint, ¶ 101) ("In every related case, Plaintiffs and Class members suffered uniform damages caused by their pur-

chase of Baby Products produced, manufactured, distributed, and/or sold by Defendants.") The counts alleged against Avent include: Violation of Illinois Consumer Fraud Act, Violation of Connecticut Unfair Trade Practices Act, Violation of State Consumer Protection Laws, Breach of Express Warranty, Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose, Intentional Misrepresentation, Negligent Misrepresentation, and Unjust Enrichment. Plaintiffs' prayer for relief includes damages in the form of: the amount of monies paid for Defendant's offending Baby Products and/or other consequential or incidental damages; actual damages, statutory damages, punitive or treble damages, and other relief as provided by the statutes cited in the complaint; injunctive relief barring Defendants from continuing their use of BPA in their Baby Products in the manner described in the complaint; and all other relief to which Plaintiffs and members of the Class may be entitled at law or in equity. The prayer for relief also asked for attorneys' fees and class certification.

After the initial pleadings stage in the consolidated actions and in the Broadway Action, Avent filed a motion to dismiss the complaints on the ground that they did not state a legally cognizable injury. Avent argued that because the plaintiffs' prayers for relief "contain no allegations of physical illness, cost of future medical monitoring, fear of future injury, or emotional distress," this was essentially a "no-injury product liability" action and should be dismissed. (Omnibus Introduction to Defendants' Motion to Dismiss, p. 9, *In re BPA*.) When responding to this motion, plaintiffs conceded that they

did not seek damages for any physical harm but rather sought only economic damages. Plaintiffs stated:

> Defendants' contention that Plaintiffs' claim must be dismissed because Plaintiffs have failed to plead a legally cognizable injury mischaracterizes Plaintiffs' claims and ignores Plaintiffs' well-pled allegations regarding the economic injuries they sustained as a result of purchasing Defendants' BPA-tainted goods. Defendants correctly note that Plaintiffs do not seek to recover for personal injuries or property damage. However, as Defendants concede, Plaintiffs do seek to recover for their economic losses. Courts routinely recognize a plaintiff's right to recover for economic loss where the plaintiff alleges he has purchased goods that do not perform satisfactorily or are worth less than represented. Plaintiffs have clearly alleged such injuries.

(Plaintiffs' Suggestions in Opposition to Defendants' Joint Motion to Dismiss All Claims of All Named Plaintiffs for Failure to Plead a Legally Cognizable Injury and Lack of Standing Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), p. 2, *In re BPA*.) In response to Avent's motion, the district court dismissed some of the claims and let others go forward. In addressing the argument that this is a "no-injury product liability" case, the district court found that to be a mischaracterization of the complaint. It found that the essence of the claim was "not that someone was injured, but that consumers were not told of BPA's presence and the corresponding health risk." (Order and Opinion Addressing Certain of Defendants' Motion to Dismiss, p. 18, *In Re BPA*.) The district court reasoned:

> The claims of Plaintiffs in this category do not depend on proving the products are defective. It is true that, in a general sense, Plaintiffs' claims revolve around "safety" in that the allegedly material facts that were concealed relate to that issue. However, Plaintiffs' claims are not predicated on proving the elements of any jurisdiction's product liability laws. . . . [T]he Plaintiffs in this category purchased a product they allege they would not have purchased had they known the true facts. Now that they know the true facts, they are unwilling to risk allowing their children to use the product. They cannot obtain the intended benefit from the goods, so they incurred damages.

(Order and Opinion Addressing Certain Defendants' Motions to Dismiss, p. 18, *In re BPA*.) Based on this rea-soning, the district court dismissed all of the counts of the complaints, except for the unjust enrichment claim, with regard to any plaintiffs who disposed of or used their products before learning about the BPA because those plaintiffs were unaffected by the defendants' alleged concealment. The district court left the unjust enrich-ment claim intact for all plaintiffs because the measure of unjust enrichment damages is the benefit conferred to the defendant, not the harm to the plaintiff.

## B. The Insurance Policies

The insurance companies provided Avent with Gen-eral Commercial Liability Insurance at various times between 1997 and 2007. State Farm provided coverage

from April 11, 1994 through April 11, 1996. Pennsylvania
General provided insurance from April 11, 1997 through
April 11, 2001, under new policy contracts each year.
Medmarc provided insurance to Avent from April 11,
2001 through April 11, 2003, and again from April 11, 2006
through April 11, 2007, under new policy contracts each
year. All parties agree that the relevant language is sub-
stantially the same in all of the insurance policies.
The relevant portion of the insurance agreement, as
taken from the Medmarc policy, states:

> a. We will pay those sums that the insured becomes
> legally obligated to pay as damages because of "bodily
> injury" or "property damage" included within the
> "products-completed operations hazard" to which
> this insurance applies. We will have the right and
> duty to defend the insured against any "suit" seeking
> those damages. However, we will have no duty to
> defend the insured against any "suit" seeking damages
> for "bodily injury" or "property damage" to which
> this insurance does not apply. We may, at our dis-
> cretion, investigate any "occurrence" and settle any
> claim or "suit" that may result.

> b. This insurance applies to "bodily injury" and
> "property damage" only if:

>> (1) The "bodily injury" or "property damage" is
>> caused by an "occurrence" that takes place in the
>> "coverage territory"; and

>> (2) The "bodily injury" or "property damage"
>> occurs during the policy period.

The agreements define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

### C. Procedural Background of the Duty to Defend Case

Avent tendered the *In re BPA* and *Broadway* lawsuits to Medmarc, Pennsylvania General, and State Farm seeking defense and indemnification for the underlying actions. Medmarc and Pennsylvania General denied coverage. State Farm and Avent entered into a standstill agreement to defer the coverage dispute. However, Avent terminated that agreement and both parties filed declaratory judgment on that issue. Medmarc also filed a complaint against Avent in October 2008 seeking a declaration that it had no duty to defend Avent in these BPA class action suits. Avent answered the complaint and counterclaimed seeking coverage. Avent then filed a third-party complaint against Pennsylvania General and State Farm seeking a declaratory judgment that they also had a duty to defend and indemnify. Although the State Farm case was initially a separate case, it was consolidated into the Medmarc Action. All three insurance companies eventually moved for either a judgment on the pleadings or summary judgment on the grounds that this was not an "occurrence" for which they provided coverage and that there were no allegations of "bodily injury." State Farm additionally claimed that any occurrence to which coverage might apply happened outside of its coverage period. Avent filed for summary judgment in opposition to the insurers' various motions.

The district court granted the insurance companies'
motions, basing its ruling on the lack of allegations
of bodily injury. Avent appeals.

## II. Discussion

This is an appeal from a grant of summary judgment
in favor of State Farm and a grant of a motion on the
pleadings in favor of Medmarc and Pennsylvania Gen-
eral. We review grants of summary judgment and motions
on the pleadings de novo. *See Bannon v. Univ. of Chi.*, 503
F.3d 623, 627-28 (7th Cir. 2008). In assessing whether the
district court correctly granted declaratory relief to the
insurance companies we must begin our analysis with a
review of the general standard for duty to defend under
Illinois law.[2] An insurer must provide its insured with a
defense when "the allegations in the complaint are even
potentially within the scope of the policy's coverage." *Nat'l
Cas. Co. v. Forge Indus. Staffing Inc.*, 567 F.3d 871, 874 (7th
Cir. 2009) (citing *Guillen v. Potomac Ins. Co. of Ill.*, 785
N.E.2d 1, 7 (Ill. 2003)). "If the underlying complaints allege
facts within or potentially within policy coverage, the
insurer is obligated to defend its insured even if the
allegations are groundless, false, or fraudulent." *Northbrook
Prop. & Cas. Co. v. Transp. Joint Agreement*, 741 N.E.2d 253,
254 (Ill. 2000). When considering whether an insurance
company has a duty to defend, the court "should not
simply look to the particular legal theories pursued by the

---

[2] All parties agree that this dispute is governed by Illinois law.

claimant, but must focus on the allegedly tortious conduct on which the lawsuit is based." *Hurst-Rosche Eng'rs, Inc. v. Commercial Unions Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995). This is because the Illinois courts have held that the duty to defend "should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.*, 728 N.E.2d 680, 688 (Ill. App. Ct. 2000). Although we focus on factual allegations above legal theories, "factual allegations are only important insofar as they point to a theory of recovery." *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Center*, 566 F.3d 689, 696 (7th Cir. 2009). Therefore, based on these standards, we must consider whether the allegations in the complaint point to a theory of recovery that falls within the insurance contract: Do the allegations amount to a claim for damages "because of bodily injury" due to "an occurrence"?

## A. Judicial Estoppel

As an initial matter, the insurance companies argue that we should hold that Avent is judicially estopped from making the argument that the underlying complaints state claims because of bodily injury and therefore give rise to a duty to defend. Judicial estoppel provides that a party who prevails on one ground in a prior proceeding cannot turn around and deny that ground in a subsequent one. *Butler v. Roundlake Police Dep't*, 585 F.3d 1020, 1022-23 (7th Cir. 2009). As discussed in the Background section, Avent previously argued that the com-

plaints in the underlying suits should be dismissed because they made no claims of physical harm and therefore were "no-injury product liability" claims. The district court agreed with their position to the extent that it held there were no claims of physical injury.

While the filings of Avent and the plaintiffs in the underlying actions are instructive on the duty to defend question, judicial estoppel is not appropriate in this case because Avent's current argument is not sufficiently in tension with its position in the underlying suits. In the underlying suit, Avent argued that the complaints did not state claims for bodily injury and therefore did not state a cause of action. The district court in *In re BPA* agreed that the complaints did not state claims for physical harm, but it found that the complaints did state viable claims for economic damages resulting from plaintiffs purchasing a product less desirable than they believed they were purchasing. In the case at bar, Avent argues that such a claim for economic damages is sufficient to trigger a duty to defend. Avent points to the language in the insurance polices that covers claims for damages "because of bodily injury" and urges the court to recognize that this phrase triggers a broader duty to defend than insurance contracts that provide coverage for claims of damages "for bodily injury." Therefore, because Avent only argued the claims were not "for bodily injury" in the underlying suit, it does not preclude their argument here that the underlying complaints state claims for damages "because of bodily injury." Although appellant's argument may appear to be threading the judicial estoppel needle, it is meritorious.

We must be careful when applying judicial estoppel in the duty to defend context. If an insurance company refuses to defend its insured in a given case, that insured still must put forth a zealous defense. In doing so, the insured may have to attack the opponent's case in ways that seem to remove it from the scope of the insurance contract. That does not necessarily absolve the insurance company from providing the exact same defense, or later reimbursing the insured for the defense. While judicial estoppel may be appropriate in certain duty to defend situations, we must be cognizant of this tension when we consider applying this doctrine in these types of cases. As such, because Avent is not asserting an argument that is in direct tension with an argument previously made in another forum, judicial estoppel is not appropriate in this context and we reach the merits of the claim.

## B. Duty to Defend

Avent argues that the factual allegations in the underlying complaints sketch out claims for damages due to Avent's creation and sale of products that cause bodily injury. Avent focuses on the allegations that exposure to BPA causes physical harm. Based on these factual allegations, Avent characterizes the complaint as alleging: "(1) the underlying plaintiffs purchased BPA-containing products manufactured, sold, and/or distributed by Avent and that BPA migrates from those products; (2) BPA potentially causes a wide variety of adverse health problems that may not manifest for years; and (3) Avent

somehow violated a standard of care by manufacturing, selling, and/or distributing BPA-containing baby products that allegedly cause these injuries." Based on this chain of allegations, Avent argues that the complaints state claims for damages because of bodily injury and therefore fall within the policy coverage. The insurance companies argue that they do not owe Avent a defense because there are no allegations in the complaint that the products caused bodily injury. Rather, the complaints allege that, due to the risk of potential bodily harm from BPA exposure, the plaintiffs did not receive the full benefit of their bargain (because they now will not use the product) and therefore incurred purely economic damages unrelated to bodily injury. We agree with the insurance companies' assessment of the complaints.

The problem with Avent's argument is that, even if the underlying plaintiffs proved every factual allegation in the underlying complaints, the plaintiffs could not collect for bodily injury because the complaints do not allege any bodily injury occurred. Additionally, the complaints do not allege that the underlying plaintiffs now have an increased risk of bodily injury for which they should be compensated. The closest the complaints come to alleging bodily injury is the allegations that Avent was aware of a large body of scientific research, extensively cited in the complaints, that BPA exposure can cause physical harm. Proving such allegations would not entitle the plaintiffs to recover for bodily injury or for damages flowing from bodily injury because these allegations lack the essential element of actual physical harm to the plaintiffs.

Avent recognizes this gap in the underlying complaints, but rebuts it with the argument that the plaintiffs left these claims out to make it easier to be certified as a class. Avent argues that "[i]t is precisely these 'whims' that are not, under Illinois law, supposed to change whether or not particular factual allegations are sufficient to trigger coverage under general liability insurance policies." Although Illinois courts have recognized that a duty to defend should not be at the mercy of the drafting whims of plaintiffs' attorneys, *Rollprint Packaging Prods. Inc.*, 728 N.E.2d at 688, these omissions were not mere whims. In the underlying cases, the plaintiffs' attorneys have limited their claims solely to economic damages that resulted from the plaintiffs purchasing a product from which they cannot receive a full benefit because they were falsely led to believe that it was safe. This is not a drafting whim (or mistake) on the part of the plaintiffs' attorneys, but rather a serious strategic decision to pursue only this limited claim. The strategic intention behind this decision is clear from the plaintiffs' concession in the underlying suit that they are seeking only economic damages and do not claim any bodily injury. The district court in the underlying suit also acknowledged this strategic decision when it found that the complaint does validly set out a claim for economic damages but not damages for physical harm. Although not binding on this court's decision in this case, it is particularly instructive that the district court in the underlying action dismissed all claims, other than unjust enrichment, for plaintiffs who disposed of their Avent baby products prior to learning of the presence

of BPA because those individuals had already received the full benefit of the bargain. This decision would be illogical if the complaint stated a claim of physical harm from the presence of BPA—if such a claim was present, those individuals who used the baby product to its fullest extent prior to learning of the BPA would have the strongest claim for damages due to exposure to BPA.

Avent relies heavily on *Ace Am. Ins. Co. v. RC2 Corp.*, 568 F. Supp. 2d 946 (N.D. Ill. 2008)[3] to support its argument that this complaint could be construed to make claims for damages because of bodily injury. The underlying complaint in *RC2* dealt with children exposed to lead paint in toys. In coming to the conclusion that the insurers in *RC2* had a duty to defend, the district court found that exposure to lead paint constituted a bodily injury. Avent characterizes the underlying complaint in *RC2* in much the same way it characterizes the underlying complaints in this case: plaintiffs purchased products sold by the defendant company that are dangerous; these dangerous products potentially cause a wide variety

---

[3] This Court recently reversed the district court's decision in *RC2* on the ground that the occurrence did not occur in China and therefore fell outside the scope of the insurance contract. *Ace American Ins. Co. v. RC2 Corp., Inc., et al.*, 600 F.3d 763 (7th Cir. 2010). We did not reach the issue of whether exposure to lead paint sufficiently constituted a bodily injury to trigger the duty. Because our decision to reverse was not based on the issue relevant here and because the differences between *RC2* and this case are instructive to our analysis, we consider *RC2* still persuasive in its distinctions.

of health problems; the defendant company violated a standard of care for selling such products. However, the complaint in *RC2* is not as similar to the complaint in this case as Avent claims. In *RC2*, the underlying complaint specifically alleged that the named plaintiffs and the class members "suffered an increased risk of serious health problems making periodic examinations reasonable and necessary." Such allegations are absent from the complaint in this case. Avent claims that the district court placed too much weight on this distinction, but this distinction is exactly what the district court should have focused on. In *RC2*, the complaint alleged that the product caused bodily injury, albeit in the form of an increased risk of future harm. In this case, there is no claim of bodily injury in any form.

Similarly, Avent's reliance on *Travelers Insurance Co. v. Penda Corp.*, 974 F.2d 823 (7th Cir. 1992), is misplaced. In *Penda*, the underlying complaint alleged that the plaintiff could not sell a given product because the paper they received from the defendant had yellowed. 974 F.2d at 825-26. The plaintiff sought damages for the lost profits from not being able to complete the sale at issue and also lost profits due to their now tarnished reputation. *Id.* We found that the duty to defend did extend to the claim for lost profits due to the lost sale because such a loss could easily be seen as "because of" the property damage to the paper. *Id.* at 829. Again, this case is not on point. The underlying complaint in *Penda* alleged actual property damage that led to a loss in profits. There is no similar claim here of actual bodily injury.

Avent also argues that the district court improperly interpreted the insurance contract as only providing coverage "for bodily injury" rather than providing coverage for damages "because of bodily injury." Avent is correct that courts do interpret these phrases differently and courts generally interpret the phrase "because of bodily injury" more broadly. *See Tara N. v. Economy Fire & Casualty Ins. Co.*, 540 N.W.2d 26, 30 (Wisc. Ct. App. 1995). The logic of this difference in interpretation can be illustrated by considering the following example: an individual has automobile insurance; the insured individual caused an accident in which another individual became paralyzed; the paralyzed individual sues the insured driver only for the cost of making his house wheelchair accessible, not for his physical injuries. If the insured driver had a policy that only covered damages "for bodily injury" it would be reasonable to conclude that the damages sought in the example do not fall within the insurer's duty. However, if the insurance contract provides for damages "because of bodily injury" then the insurer would have a duty to defend and indemnify in this situation.

Even considering the broader duty to defend created by the phrase "because of bodily injury," the complaints in the underlying suits do not reach the level of asserting claims "because of bodily injury." Implicit in Avent's argument is that the damages claimed are somehow, at least tangentially, tied to a bodily injury caused by BPA. As discussed above, that simply is not the case here. The theory of relief in the underlying complaint is that the plaintiffs would not have purchased the products had

Avent made certain information known to the consumers and therefore the plaintiffs have been economically injured. The theory of the relief is not that a bodily injury occurred and the damages sought flow from that bodily injury.

Our recent decision in *Health Care Industry Liability Insurance Program v. Momence Meadows Nursing Center*, 566 F.3d 689 (7th Cir. 2009), provides additional guidance to explain why there is no duty to defend under the current facts. In *Momence Meadows*, we addressed the duty to defend in an underlying qui tam suit brought under the False Claims Act and the Illinois Whistleblower Reward Protection Act. Although the underlying suit was in a far different procedural posture than the underlying suits in the case at hand, we interpreted identical contract language as it applied to an analogous factual situation. In *Momence Meadows*, the underlying complaint alleged mistreatment of nursing home patients that led to the nursing home submitting false claims to Medicare and Medicaid. *Id.* at 691. The complaint laid out numerous abuses that caused bodily injury to patients. However, we found that the complaint did not assert damages "because of bodily injury." We reasoned,

> The injuries to the residents as alleged by the plaintiffs relate back to Momence's cost reports to the government where it certified that it provided quality services and care. Plaintiffs claim Momence knew that was false. The statutory damages they seek result from those allegedly false filings, and not from any alleged bodily injury to the residents. Although the

allegations in the underlying complaint detailing the injuries suffered by Momence residents put a human touch on the otherwise administrative act of false billing, they need not be proven by the plaintiffs to prevail. Under the FCA and the IWRPA, the plaintiffs do not have to show that any damages resulted from the shoddy care.

*Id.* at 694. While *Momence Meadows* is procedurally distinct from the case at hand, the reasoning is exactly on point. The claims that BPA can cause physical harm only explain and support the claims of the actual harm complained of: the economic loss to the purchasers of the products due to the alleged false advertising and failure to warn. The underlying plaintiffs do not need to prove that any actual injury occurred, or even that BPA conclusively causes bodily injury, to recover on their claims.

The procedural difference between *Momence Meadows* and the case at hand affects our analysis only to the extent that the plaintiffs in *Momence Meadows* could not have amended the complaint to recover for the physical harm to the nursing home patients whereas the underlying complaints in this case could be amended to include allegations of damages stemming from actual bodily injury. If the underlying plaintiffs did amend the complaint to include factual allegations of bodily injury and damages because of that injury, Avent could re-tender the defense and the insurance companies would then be obligated to defend the action. The insurance companies' counsel admitted at oral argument that if an underlying

complaint was amended to allege actual bodily harm to a plaintiff and Avent re-tendered the defense, the insurance companies would provide a defense in that situation. We consider this statement by the insurance companies at oral argument a binding admission that they will provide a defense should the underlying plaintiffs amend the complaints in such a manner.

As a final matter, Avent points to two out-of-circuit, unpublished cases that contradict our decision in this case. Addressing factually analogous cases dealing with cellphone accessories, the Fourth Circuit and the Northern District of California both found that the insurance company in question had a duty to defend an insured corporation even if the complaint did not specifically allege that a bodily injury occurred. *See Northern Ins. Co. Of New York v. Baltimore Bus. Commc'n, Inc.*, 68 Fed. Appx. 414 (4th Cir. 2003); *Plantronics, Inc. v. Amer. Home Assurance Co.*, 07-cv-6038, 2008 WL 4665983 (N.D. Cal., Oct. 20, 2008). While we are aware of these cases, we do not find their reasoning compelling. These cases lead to a rule that would trigger the duty to defend at the mere possibility that a complaint, which on its face falls outside the parameters of the insurance policy, could be amended at some future point in a manner that would bring the complaint within the coverage limits. Such a rule would fundamentally alter the confines of an insurance company's responsibility to its insureds. The Illinois courts have not signaled any intention to adopt any such rule. Therefore, in applying Illinois law, we look only to the complaint as it stands now and not as it may (or may not) stand in the future.

Because we find that the insurance companies do not owe Avent a defense in the underlying lawsuits at this time, we do not need to reach State Farm's additional argument regarding the statute of limitations and the timing of its policies.

## IV. Conclusion

For the reasons set forth above, we AFFIRM the district court's finding that there is no duty to defend for any of the insurance companies.